Donald A. Robinson
Robinson & Livelli
Two Penn Plaza East
Newark, New Jersey 07105
(973) 690-5400
drobinson@robinsonlivelli.com

James K. Robertson, Jr.
John R. Horvack, Jr.
Fatima Lahnin
CARMODY & TORRANCE, LLP
50 Leavenworth Street
Waterbury, CT 06702
(203) 573-1200

Attorneys for Defendant
MacDermid Printing Solutions, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATOTECH USA, INC., et al., | Civil Action No.:  05-5517(FSH) |
| Plaintiff, | Hon. Faith S. Hochberg, U.S.D.J. |
| | Hon. Patty Shwartz, U.S.M.J. |
| vs. | |
| MacDERMID, INC. | |
| Defendant. | |

# MACDERMID'S MEMORANDUM OF LAW
# IN OPPOSITION TO ATOTECH'S
# MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.    Introduction .......................................................................... 1

II.   The Claims of the Patents-in-Suit are Anticipated and Obvious
      in View of the Prior Art. ..................................................... 1

      A.    MacDermid's Burden of Establishing Invalidity ...................... 1

      B.    The LPW reference Anticipates the Patents-In-Suit ................. 4

            1.    The Use of a Lead Anode ............................................... 4

            2.    The LPW Reference Describes the Use of MDSA
                  Without MSA ................................................................. 7

      C.    The LPW Anode reference Anticipates the Patents-In-Suit ...... 8

      D.    The Claims of the Patents-in-Suit are Obvious......................... 9

III.  Atotech is Guilty of Inequitable Conduct ......................................... 12

      A.    Atotech's Failure to Disclose The LPW References .............. 12

      B.    Atotech's Failure to Provide the LPW Anode Reference ....... 14

      C.    Atotech's Evasion Concerning Lead Anodes .......................... 14

      D.    Atotech's Misrepresentations Concerning MDSA ................. 15

      E.    Atotech's Misrepresentations Concerning Purity ................... 16

IV.   Genuine Issues of Fact Exist Concerning whether MacDermid
      infringes Claim 15 of the '813 Patent. ............................................. 18

V.    Genuine Issues of Fact Preclude the Granting of
      Summary Judgment with Respect to MacDermid's Antitrust
      Counterclaim. .................................................................................. 20

i

A.      MacDermid has presented facts sufficient to meet the
        intent element of its Walker Process claim. ............................ 20

B.      A genuine issue of fact exits with respect to the definition
        of a relevant market. ............................................................... 23

V.      CONCLUSION .................................................................................. 25

ii

# TABLE OF AUTHORITIES

## Cases:

Amer. Hoist & Derrick Co. v. Sowa & Sons, 725 F.2d 1350
(Fed. Cir. 1984).............................................................................. 2

Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246
F.3d 1368 (Fed. Cir. 2001) ........................................................... 8

Brown Shoe, Co. v. United States, 370 U.S. 294 (1962) ............................. 24

Cargill, Inc. v. Canbra Foods, 476 F.3d 1359 (Fed. Cir. 2007).............. 13, 17

Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337 (Fed. Cir. 2007) ............... 21, 22

eSpeed, Inc. v. BrokerTec, USA, 480 F.3d 1129 (Fed. Cir. 2007) .............. 16

Ferring B.V. v. Barr Lab., Inc., 437 F.3d 1181 (Fed. Cir. 2006) ................. 14

Fineman v. Armstrong World Industries, Inc., 980 F.2d 171
(3rd Cir. 1992) ............................................................................. 24

In re Graves, 69 F.3d 1147 (Fed. Cir. 1995) ................................................. 6

Iron Grip Barbell, Inc. v. USA Sports, 392 F.3d 1317, 1324
(Fed. Cir. 2005).......................................................................... 12

Koger v. Robert Half Int'l, 2007 WL 712225 *7 (W.D.
Pa. March 7, 2007)......................................................................... 4

KSR International Co. v. Teleflex, Inc., 127 S.Ct. 1727 (2007) .. 9, 10, 11, 12

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545
U.S. 913 (2005)........................................................................... 19

Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059
(Fed. Cir. 1998).......................................................................... 21

{W1525823}

Paragon Pod. Lab., Inc. v. KLM Labs, Inc., 984 F.2d 1182
(Fed. Cir. 1993) ............................................................................. 16

Pharmacia Corp. v. Par Pharm., 417 F.3d 1369 (Fed. Cir. 2005) ............... 15

Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430
(3rd Cir. 1997) ............................................................................. 25

Seachange Intern., Inc. v. C-Cor, Inc., 413 F.3d 1361, 1380
(Fed. Cir. 2005) ............................................................................. 8

Semiconductor Energy Lab v. Samsung Elec., 204 F.3d 1368
(Fed. Cir. 2000) ............................................................................. 14

Telemac Cellular v. Topp Telecom, 247 F.3d 1316 (Fed. Cir. 2001) ............ 6

Walker Process Equip. Inc. v. Food Mach. & Chem. Corp.,
382 U.S. 172 (1965) .................................................................... 20, 21

## Other Authorities:

35 U.S.C. § 271(c) ....................................................................... 19

37 C.F.R. 1.97 ......................................................................... 1, 2

37 C.F.R. 1.98 ......................................................................... 1, 2

MPEP § 609 ............................................................................... 2

{W1525823}

## I.     <u>Introduction</u>

On issues of anticipation, obviousness and inequitable conduct, the parties are in agreement that the material facts are not in dispute.  However, for the reasons set forth in MacDermid's Motion and herein, it is MacDermid that is entitled to judgment as a matter of law.[1]  With respect to infringement of claim 15 of the '813 Patent and MacDermid's antitrust counterclaim, the record is replete with genuine issues of material fact and Atotech's Motion must be denied.

## II.    <u>The Claims of the Patents-in-Suit are Anticipated and Obvious in View of the Prior Art.</u>

### A.     <u>MacDermid's Burden of Establishing Invalidity</u>

Atotech contends the PTO considered the LPW reference and the LPW Anode reference, and thus, MacDermid's burden of establishing invalidity should be "especially difficult."  (Brief, p. 18)  However, given the undisputed record and the law, MacDermid's burden is more easily carried because the PTO did <u>not</u> consider these invalidating references.

First, in order to have information considered by the PTO, the applicant <u>must</u> submit an information disclosure statement ("IDS") that complies with the requirements of 37 C.F.R. 1.97 and 1.98.  Once these *de minimus* requirements are met, the Examiner must consider the information and initial citations in the IDS.

---

[1] MacDermid hereby incorporates herein its Statement of Undisputed Material Facts, Declaration of Fatima Lahnin with attached exhibits, and Memorandum of Law in Support of Motion for Summary Judgment.

Information submitted to the PTO that does <u>not</u> comply with Sections 1.97 and 1.98 will <u>not</u> be considered by the PTO.  <u>See</u> MPEP § 609.  Notably, with an IDS, an applicant is <u>required</u> to produce a <u>copy</u> of any listed foreign publication and a <u>copy</u> of any English translation of a foreign language document within his "possession, custody or control."  <u>See</u> 37 C.F.R. 1.98(a)(2)(ii) & (a)(3)(ii).

In the present matter, before filing the parent application on November 6, 1989, Atotech was aware of the UK LPW reference and possessed an English translation of the French LPW reference and the German LPW Anode reference.  Attorney Marcus conceded that Atotech had a duty to provide the PTO with copies of English translations of material references in its possession.  Despite this, Atotech never filed an IDS during almost six years of prosecution.  As a consequence, the PTO <u>never</u> reviewed: (1) the UK LPW reference, (2) the English translation of the French LPW reference, or (3) the English translation of the LPW Anode reference.  Thus, there is "no reason to defer" to the PTO because the PTO did not consider any of these references.  <u>See</u> <u>Amer. Hoist & Derrick Co. v. Sowa & Sons</u>, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).

Second, Atotech suggests that even though it withheld the LPW reference, the PTO nonetheless considered the reference because it is cumulative to the '481

Patent.  A comparison refutes this contention.[2]  To assist the Court, a comparison chart is attached as <u>Exhibit B</u>.  The Court will note similarities between the documents, but much greater detail in the LPW reference as it relates to MDSA plating baths, including a reference to MDSA's low corrosion.  Consequently, MacDermid's burden of establishing invalidity is more easily satisfied because the LPW references were not considered by the PTO.

Third, Atotech suggests that the PTO considered the English translation of the LPW Anode reference because the German reference was noted in the specification of the Patents-In-Suit.  This suggestion is not true.  First, Atotech's argument fails to recognize that it cited a German language reference, while withholding the English translation.  The Examiner, therefore, could not consider the reference because the English translation was <u>only</u> in Atotech's files.  Moreover, Atotech mischaracterized the reference in a fashion that would lead the Examiner into not obtaining an English translation.  Finally, Atotech's description failed to include the anticipatory aspect of the LPW Anode reference, namely that

_____

[2]  One alarming theme in Atotech's brief is its ability to mischaracterize written documents, deposition testimony and the law.  By seizing upon a <u>partial</u> answer, Atotech falsely suggests that MacDermid's expert conceded the LPW reference was "cumulative" to the '481 Patent. The transcript illuminates Atotech's misleading arguments.  Mr. Baudrand testified the LPW reference and the '481 Patent were "in general" the same; however, he <u>further</u> explained the LPW reference contained the "exact same composition" of the Patent-in-Suit, and was "much stronger" and described "slightly different" chemistries than the '481 Patent. (Ex. A, p. 195-96)

the reference explicitly discloses the use of a lead anode with plating baths "known

from the German Pat. Appl. 34 02 554," which is the LPW reference that disclosed

three MDSA formulations and their benefits, including low corrosion.

Because of Atotech's conduct, the Examiner was unaware of material

aspects of the LPW Anode reference. The English translation of this reference,

therefore, more readily satisfies MacDermid's invalidity burden.

### B.    The LPW reference Anticipates the Patents-In-Suit

Atotech argues that the LPW reference is not anticipatory because it does

not disclose the use of a lead anode and identifies MSA as the "preferred catalyst."

(Brief, p. 22-23) Neither argument is availing because each is contrary to the

undisputed record and the law.

### 1.    The Use of a Lead Anode

Atotech adopts the litigation-inspired position that the use of a lead anode

distinguishes the claimed invention from the prior art. However, as cataloged in

MacDermid's Motion, Atotech admitted during prosecution on <u>three</u> <u>separate</u>

<u>occasions</u> that the use of a lead anode was known, not innovative, and thus, formed

no part of the invention.[3]  Most notably, in the specification of the '813 Patent,

---

[3] Atotech makes comparable concessions in its Brief. On page 8, Atotech concedes that Newby's "discovery" was using "conventional lead anodes" with MDSA. On page 16, Atotech concedes that the Jepson claims of the '175 Patent admit that lead anodes were used in the prior art. Concessions in briefs constitute <u>binding</u> judicial admissions. <u>See</u> <u>Koger v. Robert Half Int'l</u>, 2007 WL 712225 *7

Atotech admitted that the use of a lead anode was "well known to those skilled in the art and as such form no part of this invention." Atotech cannot successfully overcome in litigation the binding admissions that it made during prosecution.

Second, Atotech contends that the use of a lead anode is not inherent in the LPW reference. Specifically, Atotech argues that it was not "necessary" to use a lead anode with the LPW process because there were other anode possibilities. Atotech misapplies the inherency doctrine and seeks to undermine its purpose.

As detailed in MacDermid's Motion, the use of an anode is essential to a chromium electroplating process; therefore, some type of anode must necessarily be present in the LPW reference. Further, lead anodes have been used since the 1920's, and according to Atotech's expert, there were "very good reasons" to use a lead anode in 1985.[4] Newby also admitted that he believed lead anodes were used in the LPW examples, and when he reviews literature, he assumes that lead anodes are used unless explicitly stated otherwise. Therefore, one skilled in the art would have known that a lead anode was <u>necessarily</u> <u>included</u> in the LPW reference.

In the face of these admissions, Atotech contends that the existence of other "possibilities" somehow negates this reality. Atotech attempts to transform the inherency doctrine from whether one skilled in the art would know that lead

_____

(W.D. Pa. March 7, 2007) (attached hereto as Ex. C).

[4] Even Atotech's Business Director for General Metal Finishing, James Graham, admits that use of lead anodes was "pretty much a given" in the early 1980's and continued to be with the introduction of HEEF 25. (Ex. D, p. 77-78; 166-67).

anodes were necessarily included to whether one skilled in the art would know that lead anodes were necessarily included <u>to</u> <u>the</u> <u>exclusion</u> <u>of</u> <u>all</u> <u>other</u> <u>possibilities</u>. The former is correct in law, while the latter is not.  <u>See</u> <u>Telemac Cellular v. Topp</u> <u>Telecom</u>, 247 F.3d 1316, 1328 (Fed. Cir. 2001) (recognizing for prior art to anticipate it must include "at a minimum" the claimed charges for local, long distance, international and roaming calls); <u>In re Graves</u>, 69 F.3d 1147, 1152 (Fed. Cir. 1995) (anticipation exists when skilled artisan can take the prior art's teaching in view of his own knowledge and is in possession of the claimed invention).

Moreover, Atotech's test undermines the inherency doctrine's purpose of prohibiting monopolization of that which is already known in the prior art.  A simple example will illustrate this point.  Assume an inventor secures a patent for a new composition for pencil erasers.  The patented invention requires the inclusion of one of four chemicals (A, B, C or D) into a conventional eraser.  The patent, however, does not explicitly disclose the writing material used in the pencil (<u>i.e.</u>, lead, graphite or something else), <u>even</u> <u>though</u> the inventor had used lead pencils in his development work.  Thereafter, the same individual "discovers" that when using lead pencils, the eraser compositions using chemicals C or D last longer than compositions using chemicals A or B.  This "discovery" leads to a second patent covering eraser compositions using chemicals C or D with a lead pencil.

In this hypothetical, the skilled artisan (including the inventor) knew that the

prior patent's disclosure of a pencil necessarily included lead pencils, despite the fact that other possibilities existed.  There is nothing new added to what was already known—pencils were known to use lead and chemicals C and D were known to improve pencil erasers.  Unquestionably, then, the inherency doctrine must prohibit a second monopolization of a <u>subset</u> of known eraser compositions when used with a lead pencil.  It is pure folly to argue otherwise.

      2.    <u>The LPW Reference Describes the Use of MDSA Without MSA</u>

Atotech argues that the LPW reference identifies MSA as the "preferred" catalyst, and that this is "opposite" to what is claimed in the Patents-in-Suit.[5]  This argument fails factually and legally.  Factually, the LPW reference does <u>not</u> explicitly describe any of the catalysts (MSA, ESA, MDSA or EDSA) as "preferred."  Instead, through three formulations, four examples, and the reporting of beneficial results, the LPW reference highlights using MDSA <u>without</u> <u>any</u> <u>MSA</u>. Atotech's argument is, thus, refuted by the reference's written words.

Moreover, even if Atotech's factual assertion were true, the characterization of a "preference" is legally irrelevant in an anticipation analysis.  An anticipation

---

[5]  With respect to Atotech's citation to the word "opposite," the Court will again find a disconcerting pattern of deceptive behavior.  Specifically, in Mr. Baudrand's deposition, Atotech's counsel asked questions directed to the disclosure of the '813 Patent. (Ex. A, p. 115-16).  In response, Mr. Baudrand testified that the '813 Patent teaches the use of MDSA without MSA and that this was the "opposite" of using MSA.  This accurate and unremarkable answer has now been twisted by Atotech to be a comment on the Patents-in-Suit <u>in</u> <u>view</u> <u>of</u> <u>the</u> <u>prior</u> <u>art</u> <u>references</u>.

analysis includes <u>all</u> embodiments disclosed in the prior art reference.  <u>See</u>

<u>Seachange Intern., Inc. v. C-Cor, Inc.</u>, 413 F.3d 1361, 1380 (Fed. Cir. 2005).

Therefore, the MDSA examples are invalidating <u>even if</u> the LPW reference had

described MSA as the preferred catalyst.

### C.    <u>The LPW Anode reference Anticipates the Patents-In-Suit</u>.

Atotech contends that the LPW Anode reference is not anticipatory because:

(1) the "purpose" of the reference is the creation of a lead alloy anode that resists

the chemical attack of MSA, and (2) the teachings of the LPW reference are not

"incorporated by reference." (Brief, p. 24).  The "purpose" of the LPW Anode

reference, however, is irrelevant to an anticipation analysis.  Anticipation does not

require that the reference "teach" what the patent teaches.  It is only necessary that

the claims "read on" something disclosed in the reference.  <u>See</u> <u>Bristol-Myers</u>

<u>Squibb Co. v. Ben Venue Labs., Inc.</u>, 246 F.3d 1368, 1378 (Fed. Cir. 2001).

Atotech's "incorporation by reference" argument fares no better. [6]  Atotech

claims that the "mention" of the LPW reference is "too general to identify any

specific catalyst" and that the "mention" does not state where the "particular

---

[6]   Atotech, once again, attempts to forgo invalidity by misconstruing Mr.
Baudrand's testimony.  Atotech seizes on testimony concerning <u>one portion</u> of the
LPW Anode reference that describes the aggressiveness of alkyl sulfonic acids.
Mr. Baudrand testified that this portion of the LPW Anode reference is really
talking about MSA.  However, the questioning was <u>limited</u> to that portion of the
reference. (Ex. A, p.121-23).  Unlike the plaintiff's counsel's questioning, the
Court's anticipation analysis is <u>not</u> limited to one portion of a prior art reference.

sulfonic acid" is discussed. (Brief, p. 25-26).  Atotech misstates or misunderstands

what was incorporated by reference into the LPW Anode reference.  Claim 2 of the

LPW Anode reference claims the use of a lead anode with "hard chromium

electrolytes containing alkyl sulfonic acids."  To enable the claimed invention, the

applicants incorporated the plating baths containing alkyl sulfonic acids found in

the LPW reference, by stating: "Hard-chromium electrolytes containing alkyl

sulfonic acids are known from German Pat. Appl. 34 02 554."  It is difficult to

conceive of a more clear incorporation of information into a host document.[7]

### D.      The Claims of the Patents-in-Suit are Obvious

Atotech's rendition of the Supreme Court's decision in KSR International

Co. v. Teleflex, Inc., 127 S.Ct. 1727 (2007) is startling.  It is possible that Atotech

believed that it could diminish the likelihood of the Court entering summary

judgment against it by moving for summary judgment while mischaracterizing

documents and transcripts—thus, hoping for a Solomonic "splitting of the baby."

However, it is inconceivable that Atotech is under the impression that the Court is

unable to read, understand and apply the Supreme Court's directives and holding in

KSR.  But, that is apparently the case.

Remarkably, Atotech contends that KSR supports a finding of non-

---

[7]   Notably, Newby agreed with the clarity of what was incorporated.  The owner of
the LPW Anode reference is a company called "Blasberg"—yet, Newby wrote
"LPW anode patent application" in the top right hand corner of the reference.

obviousness.  (Brief, p. 21)  Atotech first misconstrues Justice Kennedy's background discussion of a prior decision (U.S. v. Adams), and, then, ignores the Court's holding.  Citing page 1740 of the KSR decision, Atotech contends that the Court "explained" that "when prior art teaches away from combining known elements, discovery of a successful means of combining them is more likely to be nonobvious."  (Id.)  Atotech ignores that this passage constitutes the Court's review of the Adams decision, and that in Adams, the prior art had explicitly warned about risks associated with using the type of electrodes employed by the claimed invention.  This critical fact was noted in the sentence preceding Atotech's quoted sentence; however, Atotech elected to omit that citation.

In this case, there is no warning in the prior art about using MDSA or lead anodes.  In fact, the LPW reference explains the benefits of MDSA, and Table II of the '481 Patent reports that MDSA has the same efficiency as MSA.  Similarly, lead anodes have been used since the 1920's for "very good reasons."  The Patents-in-Suit also admit that lead anodes are so well known that they form no part of the invention.  Therefore, unlike Adams, the prior art in this case does not warn against using any aspect of the claimed invention.  To the contrary, like in KSR, the prior art fails to disclose "flaws" in using either an MDSA plating bath or a lead anode.  KSR, 127 S.Ct. at 1745.  The combination of the two is, thus, obvious.

Atotech next contends that the industry did not appreciate the benefits of

MDSA with lead anodes and that the LPW Anode reference reflects an industry belief that MSA had to be used and that lead anodes had to be improved. This argument ignores the holding of KSR, which rejected the Federal Circuit's rigid application of the "teaching, suggestion or motivation" test.  The Court explained:

> The second error of the Court of Appeals lay in its assumption that a person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem. …

KSR, 127 S.Ct. at 1742 (emphasis added).

Consequently, Atotech's arguments concerning what the industry allegedly knew and whether Newby's "invention" defied "industry convention" conflict with the Court's holding in KSR.  A proper obviousness inquiry is not limited by the prior art's teachings.  Instead, the proper legal inquiry is whether it was obvious to substitute MDSA for MSA in a chrome bath that uses a lead anode.  Since MDSA was a "familiar item" at the time with known efficiency equal to MSA, it was the obvious choice.  This is particularly true given the explicit revelation in the LPW reference that MDSA had low corrosion.  A "suggestion, teaching or motivation" is no longer required under KSR.  Nevertheless, the LPW reference certainly provides one in this case—thus, giving insight into Atotech's withholding of the reference from PTO consideration for almost 6 years of prosecution.

Finally, Atotech claims that a license agreement is a "strong objective secondary factor" of nonobviousness. (Brief, p. 27) Atotech, however, has failed to

present <u>any</u> evidence concerning the license terms or the circumstances under which the license was granted.  Federal Circuit precedent is clear:

> [L]icenses may constitute evidence of nonobviousness; however, only little weight can be attributed to such evidence if the patentee does not demonstrate a nexus between the merits of the invention and the licenses of record.

<u>Iron Grip Barbell, Inc. v. USA Sports</u>, 392 F.3d 1317, 1324 (Fed. Cir. 2005) (quotations and citations omitted).

Here, Atotech has failed to demonstrate any such nexus; therefore, the Court should accord "little weight" to the alleged license.  Moreover, as in <u>KSR</u>, no secondary factor can "dislodge" the stark obviousness of the claims of the Patents-in-Suit.  <u>KSR</u>, 127 S.Ct. at 1745.

## III.   <u>Atotech is Guilty of Inequitable Conduct</u>

To defend the indefensible, Atotech resorts to contending that MacDermid cannot meet its inequitable conduct burden "but apparently does not care," and MacDermid's "obliviousness" is "particularly troublesome."  (Brief, p. 28)  As evidenced by its Motion, MacDermid is not oblivious to its burden of proof and the only "particularly troublesome" conduct is that of Atotech before the PTO.

### A.   <u>Atotech's Failure to Disclose The LPW References</u>

Atotech contends that it had <u>no</u> duty to disclose either the UK LPW reference or the English translation of the French LPW reference because the reference is cumulative to and "mirrored" the '481 Patent.  (Brief, p.30-31)

Atotech's argument fails to recognize that PTO Rule 56 did <u>not</u> include a "cumulativeness" aspect until the rule was amended in 1992.  Moreover, even after the 1992 rule change, an applicant commits inequitable conduct by violating the "reasonable examiner" standard that existed before 1992.  See <u>Cargill, Inc. v. Canbra Foods</u>, 476 F.3d 1359, 1364 (Fed. Cir. 2007).

Further, as previously detailed, the LPW reference does not "mirror" the '481 Patent.  Instead, the LPW reference is <u>more</u> <u>detailed</u> than the '481 Patent and those details were material to patentability and Atotech's patentability arguments. The EPO also used the LPW reference to reject the European counterpart application of the Patents-in-Suit, <u>and</u> Atotech used the LPW reference to secure sales of the MDSA catalyst and royalty payments on MDSA plating baths. Moreover, there is <u>no</u> evidence that Atotech made a judgment <u>during</u> <u>prosecution</u> that the LPW reference was "cumulative" to the '481 Patent.  Instead, Marcus and Newby testified that they have <u>no</u> recollection concerning why the LPW reference was not disclosed during almost 6 years of prosecution.[8]

In summary, Atotech has failed to find a credible explanation for its failure to disclose the LPW reference.  The lack of such an explanation justifies this Court

---

[8]   The Court will recall Newby's schizophrenic testimony on the subject.  First, the reason for non-disclosure was "privileged."  When that failed, the reason was that the LPW reference was "very, very different" from the Patents-in-Suit—just the opposite of cumulative.  When pressed further, Newby claimed to have no "remembrance" of how or why the LPW reference was withheld.

finding that Atotech acted with an intent to deceive.  See Ferring B.V. v. Barr Lab., Inc., 437 F.3d 1181, 1191 (Fed. Cir. 2006) (knowing, material omission without credible explanation justifies inference of deceptive intent on summary judgment).[9]

### B.    Atotech's Failure to Provide the LPW Anode reference

Atotech argues that any claim of inequitable conduct for a "failure to cite" the LPW Anode reference is "baseless" because the reference is summarized in the specification.  (Brief, p. 30)  Atotech's argument misses the point.

MacDermid's allegation and proof are clear: Atotech mischaracterized the LPW Anode reference in the specification by failing to disclose the material aspect of the reference, while withholding from PTO consideration the English translation in its files.  The words of the English translation fully anticipate the Patents-in-Suit, but the translation was withheld.  In contrast, Atotech's rendition does not anticipate the Patents-in-Suit, but instead supports its claimed "discovery."

This series of conscious choices leads to the inescapable conclusion that Atotech acted with an intent to deceive the PTO.  See Semiconductor Energy Lab v. Samsung Elec., 204 F.3d 1368, 1374 (Fed. Cir. 2000).

### C.    Atotech's Evasion Concerning Lead Anodes

The Examiner inquired whether lead anodes were used in the '481 Patent and industrial applications of the '481 Patent.  The Examiner noted Newby was in

---

[9]  Atotech also made patentability arguments that would not have been possible if the LPW reference was disclosed, creating a second inference of intent to deceive.

the perfect position to answer these questions because he was a co-inventor of the '481 Patent and explicitly warned Atotech of its duty of candor.

Contrary to Atotech's argument, Atotech's response to the Examiner, given the cropping of language and the use of punctuation, makes clear that Atotech was only affirming that Newby was in a perfect position to know the answers. But, then, Atotech evaded answering the pointed inquiries by only responding that lead anodes have for many years been used in "conventional plating processes." This does not directly answer either Examiner inquiry concerning the high efficiency processes of the '481 Patent. Truthful answers would have meant that lead anodes were inherent in the '481 Patent, and that the Patents-in-Suit were anticipated by the '481 Patent. Atotech's misleading conduct concerning facts exclusively within its possession justifies a finding of deceptive intent. See Pharmacia Corp. v. Par Pharm., 417 F.3d 1369, 1373 (Fed. Cir. 2005).

### D.  Atotech's Misrepresentations Concerning MDSA

Atotech attempts to rely upon the specification to absolve itself from submitting a false and misleading Affidavit and Amendment on July 23, 1992, following an Examiner Interview on May 29, 1992. (Brief, p. 32)  Atotech's argument, of course, fails to recognize that the Examiner particularly relied upon the Interview and Affidavit to issue the '813 Patent.

Newby's Rule 132 Affidavit provided, in relevant part:

12.    Thus, conventional anodes used with the high-energy-efficiency plating <u>catalyst</u> <u>of</u> <u>the</u> <u>present</u> <u>invention</u> last at least seven, and up more than ten, times longer than those used with <u>the</u> <u>catalyst</u> <u>of</u> <u>the</u> <u>prior</u> <u>art</u>, and provide more efficient current transfer over their lives than do those in <u>prior-art</u> <u>baths.</u>

(Ex. 14, K6) (attached to MacDermid's Motion) (emphasis added).[10]

In so doing, Atotech represented to the Examiner that MDSA was <u>not</u> a catalyst of the prior art—well knowing that the LPW reference detailed MDSA formulations <u>and</u> had been withheld from PTO consideration.  Newby separately admitted to the European Patent Office that he believed lead anodes were used in the LPW reference, and here, that he assumes lead anodes are used in chromium literature unless explicitly stated otherwise.  Therefore, Atotech knew that the prior art included MDSA with a lead anode—yet, it made explicit contrary representations in an Interview and Affidavit to secure issuance of the '813 Patent.

Such misleading misrepresentations establish an intent to deceive the PTO. <u>See</u> <u>eSpeed, Inc. v. BrokerTec, USA</u>, 480 F.3d 1129, 1138 (Fed. Cir. 2007); <u>Paragon Pod. Lab., Inc. v. KLM Labs, Inc.</u>, 984 F.2d 1182, 1188 (Fed. Cir. 1993).

### E.    <u>Atotech's Misrepresentations Concerning Purity</u>

Atotech contends that the "purification" of MSA was disclosed and, even if it had not been disclosed, it was not material to patentability.  (Brief, p. 33) Atotech's argument misstates MacDermid's allegations and proof, and understates

---

[10]  Atotech made like misrepresentations during the Interview. (Ex. 14, K1-2)

the significance of Atotech's false and misleading conduct.

The facts are clear: Atotech discovered that MSA caused corrosion because the commercial supply of MSA contained impurities – <u>not</u> because MSA was a <u>mono</u>sulfonic acid.[11]  Atotech also discovered that MDSA did not cause corrosion because the commercial supply ███████ did not contain these impurities—<u>not</u> because MDSA was a <u>poly</u>sulfonic acid.  Despite this, Atotech pursued the Patents-in-Suit based upon the contention that Newby discovered that <u>mono</u>sulfonic acids are "corrosion-producing" while <u>poly</u>sulfonics are not. Atotech engaged in this deception because it is <u>impossible</u> to secure patent protection for discovering that a commercial supplier sold a "pure" form of MDSA.  Moreover, Atotech <u>falsely</u> represented in the specification that the cause of corrosion was <u>not</u> impurities.  (<u>See</u> '813 Patent, Col. 2, L.43-48).

Because Atotech's representations conflict with Newby's research and concern whether a patentable invention ever existed, an inference that Atotech intended to deceive the PTO is required.  <u>See</u> <u>Cargill</u>, 476 F.3d at 1368 (failure to disclose test data refuting claimed invention constituted "self-serving manipulation

---

[11] Indeed, Newby pursued and secured U.S. Patent No. 4,810,337 on a method for reducing impurities in MSA in order to reduce lead anode corrosion.

of highly material evidence" that could "hardly be called good faith").[12]

## IV.    Genuine Issues of Fact Exist Concerning whether MacDermid infringes Claim 15 of the '813 Patent.

Atotech bears the initial burden of establishing that there are no genuine issues of fact with respect to infringement of Claim 15.  Nevertheless, Atotech failed to introduce <u>any</u> evidence concerning the following limitations:

"<u>Producing bright, adherent chromium deposits</u>"

Undoubtedly because of the indefiniteness of "bright," Atotech has entirely ignored this limitation, pretending it does not exist.  Specifically, there is no evidence in the record that ChromKlad 2500 produces a "bright" deposit within the meaning of this claim.  Atotech's own expert testified that "bright" is a scientifically measurable attribute.  Yet, Atotech has failed to present any measurement of the brightness of a ChromKlad deposit.  Nor has it compared that brightness to any standard.  Further, the brightness of a deposit depends on numerous variables, including the operating conditions of the plating bath, which are matters within the discretion of the customer.  Atotech has presented no evidence that any ChromKlad 2500 customer has ever produced a "bright" deposit.

"<u>In amounts sufficient to obtain efficient functional electrodeposition</u>"

---

[12] Mr. Baudrand testified extensively throughout his deposition (<u>see,</u> for example, Ex. A, p. 144-77) as well as in his expert reports about each instance of Atotech's inequitable conduct.  He also emphasized the overall pattern of conduct. Atotech attempts to blunt this testimony by selectively quoting references to the pattern of behavior while ignoring testimony directed to each individual act.

This claim element requires some determination of the concentrations of chromic acid and sulfate in relation to the efficiency of the plating bath. Atotech has failed to demonstrate that the concentrations of chromic acid and sulfate in ChromKlad 2500 are "sufficient to obtain efficient functional electrodeposition."

"In substantial absence of a corrosion- producing monosulfonic acid"

As noted in MacDermid's Markman brief, this limitation presents a "moving target" and is, thus, indefinite. As a consequence, Atotech cannot satisfy this claim element, particularly given Atotech's expert testimony that commercial sources of MDSA might be contaminated with MSA.

Moreover, even if Atotech had produced evidence that a customer's use of ChromKlad 2500 meets each limitation of Claim 15, there remain genuine issues of material fact for trial.  In discussing 35 U.S.C. § 271(c), the Court has stated:

> One who makes and sells articles which are <u>only</u> adapted to be used in a patented combination will be presumed to intend the natural consequences of his acts; he will be presumed to intend that they shall be used in the combination of the patent.

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 932 (2005) (emphasis added).

Here, however, MacDermid has presented evidence that customers can choose to plate chromium, such as ChromKlad 2500, onto substrates that have plastic or ceramic as their basis. (Ex. E at ¶10).  Thus customers do not satisfy the claim element requiring "contacting a basis-metal cathode" in Claim 15 by plating

on ceramic or plastic.  Further MacDermid makes no recommendation to its

customers as to what types of substrates (e.g., metal, ceramic or plastic) to use.  In

addition, while there is no dispute that customers typically choose lead anodes, it is

also undisputed that customers use anodes other than lead anodes.  (Id. at ¶9).

Indeed, both parties agree that the customer alone chooses which anodes to use in

the process.  (Id. at ¶8; Ex. I, p. 141).

This evidence demonstrates that ChromKlad 2500 can be used in a non-

patented combination or process, and therefore, MacDermid cannot be found to

infringe Claim 15.  For these reasons, Atotech's Motion should be denied.

**V.     Genuine Issues of Fact Preclude the Granting of Summary Judgment
with Respect to MacDermid's Antitrust Counterclaim.**

Atotech moves to dismiss MacDermid's antitrust counterclaim on two

grounds: (1) Atotech did not possess the requisite intent to substantiate a *Walker*

*Process* claim, and (2) MacDermid cannot define a relevant market as required by

Section 2 of the Sherman Act. (Brief, p.35-36).[13]  There exists genuine issues of

material fact concerning both issues, and thus, Atotech's Motion must be denied.

**A.     MacDermid has presented facts sufficient to meet the intent
element of its *Walker Process* claim.**

In Walker Process Equip. Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172,

---

[13] Atotech seeks dismissal of MacDermid's entire antitrust claim, but only argues
that MacDermid's *Walker Process* claim is deficient. Atotech ignores the sham
litigation claim for which the evidence is overwhelming. (Ex. D, p. 60-69; Ex. F).

174 (1965), the Supreme Court held that an inventor who obtains a patent by

defrauding the PTO has no immunity from the antitrust laws.  A patentee is denied

exemption when he obtains the patent by knowing and willful misrepresentations

of material facts. See Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d

1059, 1068-69 (Fed. Cir. 1998).  While true that the Federal Circuit recently

discussed the difference between "inequitable conduct" and "fraud," Atotech's

actions in this case are so reprehensible that they meet both requirements.

In Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337 (Fed. Cir. 2007), the Federal

Circuit held that an omission, by itself, was not sufficient to establish *Walker*

*Process* fraud. Id. at 1347.  In so doing, the Court drew a distinction between

*Walker Process* claims based upon affirmative acts and omissions:

> We believe, though, that to find a prosecution omission fraudulent, there
> must be evidence of intent separable from the simple fact of the
> omission. A false or clearly misleading prosecution statement may permit
> an inference that the statement was made with deceptive intent.

Id.

As detailed in MacDermid's Motion, the facts are overwhelming with

respect to Atotech's fraudulent intent.  First, there are only two omissions that form

the basis of MacDermid's *Walker Process* counterclaim, namely Atotech's failure

to disclose the LPW references.  On these issues, however, MacDermid has

marshaled facts separable from the simple fact of the omissions that support an

inference of fraud.  They include: (1) Atotech used ██████████████████

███████████████████████████████████████████

affirmatively withheld English translations of the LPW reference and the LPW

Anode reference, (3) the EPO rejected the counterpart application of the Patents-

in-Suit on the basis of the LPW reference, (4) Atotech ███████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Atotech made patentability arguments to the PTO that would not have been

possible if the references were properly disclosed, (8) during litigation, Atotech

defended the nondisclosure on the basis of "cumulativeness" even though Atotech

made no such determination during prosecution and the law does not recognize

such a defense, and (9) Atotech has no credible explanation, even in hindsight, for

its failure to disclose the reference.  Therefore, consistent with Dippin' Dots,

MacDermid has put forth facts (beyond a simple withholding of a material

reference) that justify an inference of fraud. [14]

     The balance of MacDermid's allegations constitutes commissions, not

---

[14] Atotech attempts to blunt this clear inference of intent by relying upon an
inadmissible opinion. Atotech relies extensively upon the following:
    Q. Got it. Essentially *you believe that while he committed inequitable
conduct*, he did not do it maliciously or deliberately?
    A. Correct.
Mr. Baudrand, however, was only disclosed to testify on technical issues.  He has
done so.  He has no foundation to opine on and claims no expertise in any arcane
art that permits one to plumb the depths of Atotech's level of malice.

omissions, and thus, by the nature of the act itself, a jury can reasonably infer fraud.  Specifically, Atotech mischaracterized the LPW Anode reference, while withholding the English translation of the LPW reference.  Atotech evaded answering the Examiner's pointed inquiries concerning the use of lead anodes in the '481 Patent and in industrial applications of the '481 Patent.  Atotech knew that the prior art included using MDSA with a lead anode, and yet made explicit contrary representations in an Interview and Affidavit.  Finally, Atotech secured the Patents-in-Suit based upon the false representation that the nature of sulfonic acid was the key to reducing corrosion, well knowing that the key was whether the commercial source of the alkyl sulfonic acid contained impurities.  Atotech also affirmatively misrepresented that impurities was not the cause of lead anode corrosion.  Thus, Atotech secured patent protection on a non-patentable discovery, and further failed to enable that discovery while intentionally withholding the best mode (i.e., using pure alkyl sulfonic acids).

Accordingly, Atotech cannot avail itself of antitrust immunity because the Patents-in-Suit were obtained by defrauding the PTO.  At a minimum, genuine issues of material fact exist that preclude summary judgment.

### B.  A genuine issue of fact exits with respect to the definition of a relevant market.

Atotech's Motion directed to the definition of a "relevant market" fares no better.  MacDermid has defined the relevant market as "high efficiency hard (or

functional) electrolytic chromium baths in the United States, including mixed catalyst and high efficiency etch free." Atotech claims that MacDermid has not offered "competent" evidence of the relevant market. (Brief, p. 36).[15]  In so doing, Atotech <u>ignores</u> admissions found in its business records and in the depositions of its executives.  Specifically, ███████████████████████████████

████████████████████████████████████████████████████

There is no dispute that MacDermid bears the burden at trial of establishing a "relevant market."  The boundaries of a relevant market are determined "by examining such practical indicia as industry or public recognition of the [market] as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors."  <u>Brown Shoe, Co. v. United States</u>, 370 U.S. 294, 370 (1962).  "[T]he determination of a relevant product market ... is a highly factual one best allocated to the trier of fact."  <u>Fineman v. Armstrong World Industries, Inc.</u>, 980 F.2d 171, 199 (3rd Cir. 1992).

In this case, Atotech's marketing materials make clear that MacDermid has

---

[15] Atotech misrepresents the testimony of MacDermid's damage expert. Atotech's insertion of "antitrust" in the question is misleading and inaccurate. (Brief, p. 36) The question did not address the definition of the relevant market. Instead, the question addressed whether Atotech held a monopoly. (Ex. G, p. 23-26). Egregiously, Atotech ignores that Mr. Kosowsky testified that he was <u>not</u> offering a relevant market opinion for the Section 2 Sherman Act claim. (<u>Id.</u>, p. 40).

appropriately defined the relevant market. Specifically, Atotech distinguishes HEEF 25 from other chrome plating baths and details the unique aspects of HEEF 25. (Ex. H; Ex. D, p. 106-125)  While Atotech's documents confirm that the *relevant* market could consist of only HEEF 25, MacDermid has not so narrowly defined the relevant market.  Instead, MacDermid defined the relevant market to include mixed catalyst products.  Thus, MacDermid has <u>not</u> defined the relevant market solely in view of the processes covered by the Patents-in-Suit.  Moreover, MacDermid's definition is consistent with the deposition testimony of two Atotech executives. (Ex. D, p. 143-45; Ex. I, p. 184-86).

Atotech's reliance on <u>Queen City Pizza, Inc. v. Domino's Pizza, Inc.</u>, 124 F.3d 430 (3rd Cir. 1997), is misplaced.  In <u>Queen City</u>, the plaintiff alleged that Domino's had monopolized the market for ingredients and services. <u>Id</u>. at 437. The Third Circuit rejected the proposed relevant market because the dough, tomato sauce, and paper cups approved by Domino's were commercially interchangeable with the dough, sauce and cups available from other suppliers. <u>Id</u>.

In stark contrast, the relevant market before this Court is not narrow or contrived. Instead, it is based on Atotech's own conception of the relevant market. Consequently, Atotech's Motion must be denied.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Atotech's Motion should be denied in its entirety.

Dated: June 8, 2007

                                        *s/Donald A. Robinson*
                                        Donald A. Robinson