# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ATOTECH USA INC.<br><br>and<br><br>ATOTECH DEUTSCHLAND GMBH<br><br>        Plaintiffs,<br><br>        v.<br><br>MacDERMID INC.,<br><br>        Defendant. | Civil Action No. 05-5517 (FSH) |

## ATOTECH'S RESPONSE TO MACDERMID'S
## OPENING MARKMAN BRIEF

William J. O'Shaughnessy
Richard Hernandez
MCCARTER & ENGLISH, LLP
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652
(973) 622-4444

Jay R. Campbell
Todd R. Tucker
Joshua M. Ryland
RENNER, OTTO, BOISSELLE
    & SKLAR, LLP
19th Floor
1621 Euclid Avenue
Cleveland, OH 44115
(216) 621-1113

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   DISCUSSION..............................................................................................2

    A.   The Meaning Of "High-Efficiency, Etch-Free Plating Bath." ................2

    B.   The Meaning Of "Lead Anode." ............................................................3

    C.   The Meaning Of "Substantial Absence Of A Corrosion-Producing Monosulfonic Acid" In The '813 Patent. ..............................................5

    D.   The Meaning Of "Bright."......................................................................6

    E.   The Meaning Of "Current Density Of At Least 30 a.s.d."......................7

    F.   The Meaning Of "Replacing At Least Part Of The Alkylsulfonic Acid With An Alkyldisulfonic Acid."......................................................8

    G.   The Meaning Of "Corrosion Of The Lead Anode Is Substantially Reduced." .................................................................................................9

III.  CONCLUSION............................................................................................9

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Exxon Research and Eng'g Co. v. U.S.*, 265 F.3d 1371 (Fed. Cir. 2001) ........ 5, 6, 9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ................................... 1, 3, 4

## I. INTRODUCTION

MacDermid tries to make claim construction a metaphysical exercise requiring complex, lawyer-driven interpretations. It is not. Claims are to be interpreted through the eyes of a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). And the terms at issue here are well understood by those skilled in the art—even MacDermid's expert. Indeed, MacDermid's proposed constructions not only contradict Federal Circuit law and both parties' expert testimony, but its own summary judgment arguments.

MacDermid's brief narrows the meaning of "high-efficiency, etch-free baths" and "lead anodes" to the exact embodiments described in the patents—or worse, the prior art. Hornbook patent law bars this approach. For the bulk of the remaining claims, MacDermid posits that each is indefinite, citing arguments that have *never* been raised in their interrogatory responses or expert report. Why? Because MacDermid's expert flatly admitted that the claim terms were defined more than adequately to opine on validity and infringement:

> Q. Did you think that those terms were so unclear that you were unable to opine on the validity of the patent?
> A. No.
> Q. You didn't -- and you were still able to opine on whether or not the patent was infringed or not?
> A. Yes.

(Ex. A, Baudrand Depo., p. 75.)

MacDermid's expert even testified that he understood the claims perfectly

well and *did not believe that any claim terms were indefinite*:

> Q. So you still felt that you had a sufficient understanding of what was meant by the terms --
> A. Yes.
> Q. -- to be able to understand the claim?
> A. Exactly.
> Q. *And for that reason you did not opine or come to the conclusion that any of the claims of the '813 patent is invalid based on a term being indefinite, right?*
> A. *That's correct.*

(Ex. A, pp. 76-77.)

Even assuming MacDermid is willing to jettison its expert and start over, its new arguments find no support in settled Federal Circuit law. MacDermid is simply trying to "gerrymander" the claims, arguing one meaning to support its summary judgment brief and positing another during claim construction to avoid infringement. This waffling guts both of MacDermid's positions and underscores why Atotech's straightforward constructions should be adopted.

## II. DISCUSSION

### A. The Meaning Of "High-Efficiency, Etch-Free Plating Bath."

As used in the '813 patent, "High-Efficiency, Etch-Free Plating Bath" means "**a high efficiency plating bath having a secondary catalyst that does not cause substantial etching of the cathode**."

This simple phrase needs no definition. Nothing in the specification, or elsewhere, supports adopting MacDemid's blatant attempt to read limitations, such

as the "ratio of sulfur to carbon of 1/3 or greater" into this phrase—especially when this definition comes from Atotech's earlier '481 patent.[1] (MacDermid's Opening Markman Brief, pp. 1-2.) Claim construction is not an opportunity to read extraneous limitations from the specification into the claims as MacDermid urges. *See, Phillips*, 415 F.3d at 1323 (expressly rejecting notion that claims are limited by the examples given in the specification). Indeed, even MacDermid's expert report proposes that the "claim language"—meaning ordinary definition—be adopted. (Ex. B, p. 7.) As MacDermid's definition dodges both its expert's construction and impermissibly imports embodiments from the prior art, Atotech's construction should be adopted.

### B. The Meaning Of "Lead Anode."

> As used in the '175 and '813 patents, "lead anode" means "***anodes that in use are composed at least in part of lead***."

Atotech's expert explained that "lead anode" in the specification would be understood by a person of ordinary skill to mean an anode that in use is composed at least in part of lead. (Ex. C, p. 225.) He further explained why a person of ordinary skill in the art would understand that to be the correct definition—namely

---

[1] MacDermid claims that Atotech's expert agreed with its claim construction. Hardly. When asked what "high-efficiency etch-free plating bath" meant, Mr. Altmayer simply responded, "It's a generic term that basically refers to baths that have secondary catalysts that are of the sulfonic acid types." (Ex. C, Altmayer Depo., pp. 220-21.)

3

"any surface that has lead there to produce the lead peroxide which is what give the beneficial properties." (Ex. C, p. 222.)

Like its definition of "high-efficiency, etch-free plating bath," however, MacDermid limits "lead anode" to the preferred embodiment—hoping to carve out liability for sales to customers informed to use inert anodes, such as platinized titanium, that are *coated* with lead in use as Mr. Altmayer described. (Ex. C, p. 222.)

Although MacDermid takes shots at Mr. Altmayer's definition, its general counsel's testimony supports that definition (and MacDermid's infringement):

> Q. So it's contemplated that either your internal sales staff or service staff or a customer would use ChromKlad 2500 with a lead anode?
> A. I don't know whether – *I guess to some extent, it is*.
> Q. To some extent it is, because at this point you advise them [in the Chromklad 2500 Technical Data Sheet] on what to do if you have lead [chromate] buildup, correct?
> A. Right.
> Q. And if they have lead – and your understanding of what causes lead chromate buildup is using lead anodes, correct?
> A. Yes. I'm not sure if that's the only way to get it, though.
> Q. Do you have any idea of what the other ways to get it would be?
> A. I've seen discussions of people *utilizing other inert anodes that are coated with -- that are coated with something like lead oxide coating*.

(Ex. D, Cordani Depo., pp. 56-57 (emphasis added), *see also*, Ex. E, ChromKlad 2500 Technical Data Sheet, p. 9.)

4

To be sure, the Federal Circuit expressly rejected limiting terms to a single embodiment as MacDermid urges this Court to do. *See, Phillips*, 415 F.3d at 1323. And the fact that MacDermid now attempts to narrow the term "lead anode" to avoid infringement—when its own general counsel agrees with Mr. Altmayer—only confirms Atotech's construction.

### C.  The Meaning Of "Substantial Absence Of A Corrosion-Producing Monosulfonic Acid" In The '813 Patent.

> As used in the '813 patent the term means **"amount of monosulfonic acid in the bath that is insufficient; *i.e.*, equal to or greater than zero, to cause anode corrosion greater than that encountered in conventional chromium plating baths."**

MacDermid argues that the subject phrase is indefinite "because it fails to provide a certain limitation as to the maximum amount of monosulfonic acid allowed" and because of the comparison to a "conventional plating bath." (MacDermid's Opening Markman Brief, p. 7.)  MacDermid's expert, however, testified that he understood this term and did not believe it was indefinite. (Ex. A, pp. 76-77.)  In fact, MacDermid's expert even offered a claim construction for this phrase in his expert report. (Ex. B, pp. 7-9.)  It is hornbook Federal Circuit law that a claim is indefinite *only* if it cannot be construed. *See*, *e.g., Exxon Research and Eng'g Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) ("By finding claims indefinite *only if reasonable efforts at claim construction prove futile*, we accord respect to the statutory presumption of patent validity.")(internal citations omitted,

5

emphasis added). Here, MacDermid's expert not only testified that none of the claims were indefinite, but *he provides a claim construction*.

Moreover, the Federal Circuit has consistently held that "close questions of indefiniteness in litigation involving issued patents are properly resolved *in favor of the patentee*." *Id*. at 1380 (emphasis added). The instant case does not present a close question as MacDermid's confusion appears feigned. MacDermid certainly understood this type of claim term before the suit, and in fact used very similar language itself in its patents. For example, MacDermid's U.S. Patent No. 5,080,733, uses remarkably similar claim language in which the amount of an alkyl sulfonic acid in the claim is determined qualitatively by its effect on corrosion as compared to the corrosion caused by conventional chemistry:

> …[alkyl] sulfonic acid in an amount effective to increase the corrosion resistance…as compared to a chromate conversion coating formed on said metal surface from a composition without said [alkyl] sulfonic acid.

(Ex. F, U.S. Patent No. 5,080,733, claim 1.)

The claim term is definite. Because MacDermid does not provide a definition for this term, Atotech's proffered definition should be adopted.

### D. The Meaning Of "Bright."

> As used in the '175 and '813 patents, "bright" means "**a high degree of reflectivity.**"

To allege that this term is indefinite is more than a bit disingenuous. Not only did MacDermid's expert understand the term, but its own technical data sheet explains to its customers that use of ChromKlad 2500 provides a *"bright"* finish. (Ex. A, pp. 76-77) MacDermid also understood the meaning well enough to use the word "bright" in the claims of several of its patents, for example, U.S. patent Nos. 4,600,609 (Ex. G); 4,849,059 (Ex. H); and 6,372,117 (Ex. I), its ChromKlad 2500 advertising materials (Ex. J), and its ChromKlad sales and technical training presentations (Ex. K). Also, MacDermid tellingly never listed "bright" as an indefinite claim term in its interrogatory responses *during the entire discovery period*. (Ex. L, pp. 3-7.)

Bright needs no special definition. As Atotech's expert testified, it is clearly understood by those in the art to mean "a high degree of reflectivity." (Ex. C, p. 240.) Since MacDermid did not propose a definition, Atotech's definition should be adopted.

### E. The Meaning Of "Current Density Of At Least 30 a.s.d."

> As used in '813 patent, "Current Density Of At Least 30 a.s.d." **means the "current density as measured at the cathode is at least 30 a.s.d."**

Like the other terms that MacDermid alleges to be indefinite, MacDermid had no problem with the meaning of this term in its motion for summary judgment. And, again, its interrogatory responses never claimed this phrase to be indefinite.

7

(Ex. L, MacDermid's Interrogatory Responses.) Nor did its expert find this term indefinite. (Ex. A, pp. 76-77.)

In the context of chromium plating, it is understood that "current density" refers to the current at the cathode. (Ex. C, pp. 164, 174.) Indeed, MacDermid consistently refers to "cathodic current density" as "current density" when describing the LPW Catalyst application and Atotech's '481 patent in MACDERMID'S STATEMENT OF UNDISPUTED MATERIAL FACTS. (¶¶ 52, 53, 69.) MacDermid also uses the term "current density" to mean cathode current density in its sales and technical training materials. (Ex. M, Kern ChromKlad Presentation.)

MacDermid's argument that the current density claimed in dependent claim 14 is broader than claim 1 of the '813 Patent is equally unavailing. Like several other arguments, MacDermid failed to raise its challenge to claim 14 in any interrogatory response. Further, Atotech is not likely to raise claim 14 at trial.

### F. The Meaning Of "Replacing At Least Part Of The Alkylsulfonic Acid With An Alkyldisulfonic Acid."

> As used in the '175 Patent, this term means "**use of an alkyldisulfonic acid, halogenated alkyldisulfonic acid or salt thereof instead of some or all of the alkysulfonic acid**."

MacDermid argues that the word "replacing" in this step takes on a wholly unique definition requiring the replenishment of an existing bath "such that some of the corrosion producing alkysulfonic acid remains in the plating bath."

8

(MacDermid's Opening Markman Brief, p. 18.) MacDermid then spends 6 pages trying to justify this specialized definition. When construing the phrase to argue invalidity in its summary judgment brief, however, MacDermid abandons this definition in favor of a common sense meaning of "replacing"—the one advocated by Atotech. In fact, MacDermid considered the subject phrase as having the same meaning as "substantial absence of a corrosion producing monosulfonic acid" used in the '813 Patent and, in discussing both limitations collectively, stated that "*the parties agree that a plating bath without any MSA satisfies this claim limitation*." (MacDermid's Summary Judgment Brief, p. 11.)

### G. The Meaning Of "Corrosion Of The Lead Anode Is Substantially Reduced."

As used in the '175 patent the term means "**anode corrosion substantially less than that encountered in chromium plating baths using alkylsulfonic acids**."

Again, this term requires no special definition and is definite to those skilled in the art—such as MacDermid's expert. (Ex. A, pp. 76-77.) Moreover, MacDermid's claim that this term is indefinite fails for the same reasons described in Section C—without question the claim can be construed—and Atotech's construction should be adopted. *Exxon Research*, 265 F.3d at 1375.

### III. CONCLUSION

MacDermid cannot distance itself from its own expert testimony and the

9

record of this case by raising new—and unsupported—claim constructions. The claim terms at issue in the case are both few and simple as confirmed by those skilled in the art. Accordingly, the Court should adopt Atotech's proposed claim constructions.

                                        Respectfully submitted,

                                        <u>s/ William J. O'Shaughnessy</u>
                                        William J. O'Shaughnessy
                                        Richard Hernandez
                                        MCCARTER & ENGLISH, LLP
                                        100 Mulberry Street, P.O. Box 652
                                        Newark, NJ 07101-0652
                                        (973) 622-4444

                                        Jay R. Campbell
                                        Todd R. Tucker
                                        Joshua M. Ryland
                                        RENNER, OTTO, BOISSELLE & SKLAR, LLP
                                        1621 Euclid Avenue, 19th Floor
                                        Cleveland, OH 44115
                                        (216) 621-1113