# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____  :

ATOTECH USA INC.                 :
                                 :
and                              :
                                 :
ATOTECH DEUTSCHLAND              :
GMBH                             :
                                 :    Civil Action No. 05-5517 (FSH)
          Plaintiffs,            :
                                 :
     v.                          :
                                 :
MacDERMID INC.,                  :
                                 :
          Defendant.             :
_____  :


---

## REPLY MEMORANDUM IN SUPPORT OF ATOTECH'S
## MOTION FOR SUMMARY JUDGMENT

---

William J. O'Shaughnessy            Jay R. Campbell
Richard Hernandez                   Todd R. Tucker
MCCARTER & ENGLISH, LLP             Joshua M. Ryland
100 Mulberry Street                 RENNER, OTTO, BOISSELLE
P.O. Box 652                            & SKLAR LLP
Newark, NJ 07101-0652               19th Floor
(973) 622-4444                      1621 Euclid Avenue
                                    Cleveland, OH 44115
                                    (216) 621-1113

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................1

II.    ARGUMENT.................................................................................................2

    A.   Atotech's Patents Are Valid ...............................................................2

        1.   Atotech's patents are not anticipated by either LPW reference......2

        2.   Atotech's patents defied the industry's conventions and are not obvious. .............................................................................................5

    B.   MacDermid Admittedly Infringes At Least Claim 15 of the '813 Patent ...............................................................................................7

        1.   MacDermid's TDS for its ChromKlad 2500 Process admits that its use produces a "bright, adherent chromium deposit." ........8

        2.   MacDermid's expert admitted that ChromKlad 2500 is used "in amounts sufficient to obtain efficient functional electrode position." .............................................................................................8

        3.   MacDermid's expert admitted that ChromKlad 2500 satisfies the claim limitation of "in the substantial absence of a corrosion-producing monosulfonic acid." .....................................9

        4.   MacDermid's Attempt To Manufacture An Issue Of Fact. ............9

    C.   MacDermid's Inequitable Conduct Defenses Should Be Dismissed....10

    D.   MacDermid Fails To Establish Both The Fraudulent Conduct and Market Power Necessary To Sustain An Antitrust Counterclaim. .......12

III.   CONCLUSION............................................................................................14

## TABLE OF AUTHORITIES

## CASES

*Atofina v. Great Lakes Corp.*, 441 F.3d 991 (Fed. Cir. 2006)........................ 2, 4, 10

*Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435 (Fed. Cir. 1991)...........................................................................................................11

*KSR International Co. v. Teleflex Inc. et al.*, 127 S.Ct. 1727 (2007) .............. 5, 6, 7

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335 (Fed. Cir. 2006) ..............................................................................................12

*Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368 (Fed. Cir. 2005)......................2

*Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364 (Fed. Cir. 2002)............................................................................................................3

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292 (Fed. Cir. 2002)...............4

*United States v. Adams*, 383 U.S. 39 (U.S. 1966) ................................................6, 7

*United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377 (1956)................13

## I.    INTRODUCTION

While MacDermid's needlessly shrill opposition claims disputed facts at every turn, MacDermid failed to ***contest*** a single undisputed fact that Atotech submitted under Local Rule 56.1.  Nor did MacDermid's opposition provide ***cites*** for the bulk of these alleged fact disputes—despite Atotech's care in providing pinpoint citations to facts and law.  To be sure, invective cannot supplant the objective record.

Atotech's patents in suit are both valid and enforceable.  Indeed, many of the same arguments raised by MacDermid have been rejected by the U.S. Patent Office, the European Patent Office, and, judging by the commercial success and licensing of Atotech's patents, rejected by the marketplace.  Simply put, MacDermid ignored Atotech's patents—and admittedly infringes, and it is now attempting to ignore Atotech's arguments.  Atotech's motion for summary judgment should be granted.

## II.    ARGUMENT

### A.    Atotech's Patents Are Valid

#### 1.    Atotech's patents are not anticipated by either LPW reference.

By repeatedly arguing that lead anodes are well-known, MacDermid reveals a confusion between obviousness and anticipation.  "Anticipation requires a showing that each limitation of a claim *is found in a single reference*, either expressly or inherently."  *Atofina v. Great Lakes Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006), *citing Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1369 (Fed. Cir. 2005).  MacDermid consistently disregards this requirement, attempting to backfill the missing claim elements in its prior art with incorrect and contradictory notions of inherency and incorporation by reference.

To skirt the fact that the LPW Catalyst Application does not mention anodes, let alone require using *a lead anode*, MacDermid simply presumes that "a lead anode was necessarily included in the LPW reference."  (Opp. Br., p. 5.)  This ignores that MacDermid's other asserted reference, the LPW Anode Application, plainly describes the use of *other anode materials*—namely, titanium.  (Ex. A, p. 3.)  And MacDermid's witnesses conceded that an even wider variety of anode materials are used for hard chrome plating:

- <u>John Cordani, General Counsel</u>: "[T]here are a variety of anodes that can be used." (Deposition of John Cordani ("Cordani Depo.," Ex. B), p. 71-72.)

- <u>Brad Durkin, Former Global Director</u>: "They can use many different kinds [of anodes].  Some use lead, some use alloys of lead, some use platinized titanium and other types of materials, niobium and other things. . . ." (Deposition of Bradley Durkin ("Durkin Depo.," Ex. C), p.195.)

- <u>Donald Baudrand, MacDermid's Expert</u>:  Confirmed at least *five* different types of anodes, in addition to lead, including "platinized titanium," "stainless steel," "iron," "baridium oxide," and "carbon graphite." (Deposition of Donald Baudrand ("Baudrand Depo.," Ex. D), p. 40-41.)

Indeed, if lead anodes were *necessary*, one can only wonder why MacDermid *changed* the ChromKlad 2500 Technical Data Sheet ("TDS") to recommend "commercially available materials" rather than lead anodes.  (Ex. E, p. 5.)

Simply put, MacDermid's reliance on inherency is misplaced.  Just because the "use of *an anode* is essential" in chrome plating, use of a *lead anode* is not "necessarily included" in the LPW Catalyst reference.  "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must <u>necessarily</u> include the unstated limitation, [or the reference] cannot inherently anticipate the claims."  *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) (emphasis in original).  Here, MacDermid's witnesses concede that various anode materials can be used.  The fact that lead anodes are one *possibility* does not make them *inherent* in the LPW Catalyst Application.

3

*See, e.g., Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) ("Inherent anticipation requires that the missing descriptive material is 'necessarily present,' ***not merely probably or possibly present***, in the prior art.").

Likewise, MacDermid cannot fix the LPW Anode Application by arguing that the missing claim element—use of MDSA in the substantial absence of MSA—is incorporated by reference.  The LPW Anode Application lacks any specific, objective language incorporating MDSA by reference.  The ***only*** catalyst it mentions is MSA.  And MacDermid's expert conceded that the term "alkyl sulfonic acid"—MacDermid's core argument for incorporation by reference— conventionally refers to MSA.  (Ex. D, Baudraud Depo., p. 157).

Indeed, even giving "alkyl sulfonic acid" its ***broadest*** meaning would not make the LPW Anode Application anticipatory prior art.  "It is well established that the disclosure of a genus in the prior art is not necessarily a disclosure of every species that is a member of that genus."  *Atofina*, 441 F.3d at 999 (emphasis added).  Here, the genus of catalysts mentioned—"alkyl sulfonic acids," if interpreted contradictory to the testimony of Mr. Baudrand as including ***poly***sulfonic acids—is composed of "an ***infinite*** number of compounds in theory." (Deposition of Kenneth Newby ("Newby Depo.," Ex. F), p 37.)  ***One*** is MDSA.

Merely reciting a generic ***genus*** of alkyl sulfonic acids does not teach the ***species*** MDSA—let alone teach ***the use of MDSA in the substantial absence of***

*MSA*.  *See*, *Atofina*, 441 F.3d at 999.  Thus, MacDermid's argument that "[i]t is difficult to conceive of a more clear incorporation of information" is at odds with its own prior art.  (Opp. Br., p. 9.)  The LPW Anode reference does not incorporate MDSA by reference.  Atotech's claims should be declared valid.

### 2.  Atotech's patents defied the industry's conventions and are not obvious.

MacDermid's vitriol aside, the U.S. Supreme Court's recent *KSR* decision[1] confirms the ***validity*** of Atotech's patents by confirming the importance of objective, common sense considerations over rigid tests.

Perhaps the most compelling objective consideration is that MacDermid's key obviousness reference, the LPW Anode application, actually ***teaches away*** from the invention of the patents in suit.  MacDermid concedes this point:

> Admittedly, the LPW Anode application does teach that the solution to lead anode corrosion lies within the composition of the lead anode.

(MacDermid's Summ. J. Br., p. 19.)

If anything, the LPW Anode reference demonstrates that the industry believed that the key to solving anode corrosion was ***to use MSA*** with a better anode—not ***to replace MSA*** with MDSA.  Indeed, MacDermid's expert admits that prior art teaching MSA as the preferred catalyst—and MSA is the ***only*** catalyst

---

[1] *KSR International Co. v. Teleflex Inc. et al*., 127 S.Ct. 1727 (2007).

specifically referenced in the LPW Anode application—is the "opposite" of Dr. Newby's invention.  (Ex. D, Baudrand Depo., pp. 115-116.)

Another key objective consideration is that LPW never came up with Dr. Newby's invention—and its successor licenses that invention today.  While MacDermid relies upon LPW's Anode and Catalyst applications as proof that it would be "obvious to try" combining a lead anode with MDSA to the substantial exclusion of MSA, ***LPW did not think so***.  Instead, LPW was convinced, as MacDermid admits, that "the solution to lead anode corrosion lies within the composition of the lead anode."  (MacDermid's Summ. J. Br., p. 19.)

Finally, while MacDermid questions Atotech's characterization of *KSR,* especially regarding *KSR's* cite to *United States v. Adams*, 383 U.S. 39 (U.S. 1966), both cases ***support*** the patentability of the Atotech's inventions.  Indeed, the Supreme Court in *KSR* relied upon the principle announced in *Adams* "that when the prior art teaches away from combining certain known elements, discovery of a successful means of combining them, ***is more likely to be nonobvious***."  *KSR*, 127 S.Ct. 1740; *citing Adams,* 383 U.S. at 50-52.  That principle applies here. MacDermid admits that the LPW Anode reference ***teaches away*** from the invention—in fact it teaches that MSA should be used.  (MacDermid's Summ. J. Br., p. 19.)  Thus Dr. Newby's invention—the use of MDSA with lead anodes in

6

the substantial absence of MSA—"is more likely to be non-obvious." *KSR*, 127 S.Ct. 1740; citing *Adams v. U.S.,* 86 S.Ct. at 708.

It is MacDermid's burden to prove obviousness by ***clear and convincing evidence***.  It cannot do that when all of the objective, common sense considerations endorsed by the Supreme Court in *KSR* point to the patentability of Dr. Newby's inventions.  Atotech's patents should be declared valid.

### B.   MacDermid Admittedly Infringes At Least Claim 15 of the '813 Patent

MacDermid argues that "Atotech failed to introduce <u>any</u> evidence" on a number of limitations of claim 15 of the '813 Patent.  (Opp. Br., p. 18.) (emphasis in original).  That is simply not true.  Indeed, Michael Siegmund, president of the Americas for MacDermid, testified that MacDermid's ***general counsel*** advised him that if the '813 patent was valid, then ***MacDermid infringed it***:

> Q.    But there wasn't any discussion of the risk if the patents weren't found invalid, correct?
>
> A.    I think that John -- no, I think that ***if we could not prove the patent's invalid, yes, I guess then we would have been infringing, or at least that was the message John [Cordani, MacDermid's general counsel] was giving to me.***

(Deposition of Michael Siegmund ("Siegmund Depo.," Ex. G), p. 65.)

MacDermid does not address this admission of infringement—it simply ignores it.  Nor does MacDermid address: (1) its employees' statements that

ChromKlad is used *only* with lead anodes (Opening Br., p. 40); (2) confirmation from a MacDermid customer that lead anodes were used exclusively (*Id*.); (3) the fact that the ChromKlad 2500 TDS states that the infringing process produces a "bright deposit" (*Id*. at 40-41); (4) and that its expert conceded infringement of the remaining claim elements MacDermid contests in its opposition (Expert Report of Donald Baudrand ("Baudrand Report," Ex. H), pp. 43, 52).

> **1.    MacDermid's TDS for its ChromKlad 2500 Process admits that its use produces a "bright, adherent chromium deposit."**

MacDermid claims that Atotech has "entirely ignored" the limitation that the claimed process produces a "bright" finish.  To the contrary, Atotech's brief plainly cites MacDermid's TDS that admits use of the ChromKlad 2500 process produces a *"hard deposit"* with a *"bright"* finish.  (Ex. E., pp. 1-2.; Opening Br., pp. 40-41.)

> **2.    MacDermid's expert admitted that ChromKlad 2500 is used "in amounts sufficient to obtain efficient functional electrode position."**

MacDermid argues that Atotech "failed to demonstrate" that the concentrations of chromic acid and sulfate in the ChromKlad 2500 process fall within the limitations of claim 15.  MacDermid ignores that its expert expressly "conceded" that ChromKlad 2500 includes this limitation.  (Ex. H, Baudrand Report, p. 43.)  In any event, as MacDermid's TDS for ChromKlad 2500 admits,

8

ChromKlad 2500 is an "industrial (hard) chromium plating process" that produces a "Hard deposit."  (Ex. E, pp. 1-2.)

### 3. MacDermid's expert admitted that ChromKlad 2500 satisfies the claim limitation of "in the substantial absence of a corrosion-producing monosulfonic acid."

In response to Atotech's uncontested infringement evidence, MacDermid resorts to claim construction arguments—chiefly, that the claim is indefinite and thus not met by ChromKlad 2500.  Again, MacDermid ignores that its expert "*conceded*" this limitation was met. (Ex. H, Baudrand Report, p. 43.)  Moreover, MacDermid's expert stated "ChromKlad 2500 *only* contains methane disulfonic acid and *does not contain* any alkyl [mono]sulfonic acid (i.e. methylsulfonic acid)."  (Ex. H, Baudrand Report, p. 59.)  Thus, there is a "substantial absence of a corrosion-producing monosulfonic acid" in ChromKlad 2500.

### 4. MacDermid's Attempt To Manufacture An Issue Of Fact.

MacDermid argues that it has presented evidence that a customer "*can*" choose to plate on plastic or ceramic and that "*some customers use*" an anode other than lead—all based on an affidavit of its employee, James Schweitzer. Tellingly, however, neither MacDermid nor Mr. Schweitzer identify *any customers* plating anything other than a "basis metal" using ChromKlad 2500  or that *any customer of ChromKlad 2500* actually use a non-lead anode.  Indeed,

MacDermid's former employees, Mr. Kern and Mr. Varuolo, affirmatively stated that ***MacDermid's customers*** use lead anodes nearly 100% if not exclusively. (Deposition of Ray Kern ("Kern Depo.," Ex. I), pp. 171-72; Deposition of Anthony Varuolo ("Varuolo Depo.," Ex. J), pp. 69, 71.)

There is no substantial non-infringing use for ChromKlad 2500. Atotech's motion for summary judgment of infringement of claim 15 of the '813 Patent should be granted.

## C. MacDermid's Inequitable Conduct Defenses Should Be Dismissed.

MacDermid's vitriolic charge that Atotech is "guilty" of inequitable conduct continues to ignore its obligation to prove ***intent*** to deceive the Patent Office by clear and convincing evidence. Rather than provide any evidence of intent, MacDermid repeats its litany of alleged omissions—many that appear in the intrinsic record—and concludes that intent should be presumed. In doing so, MacDermid asks this Court to hold precisely what the Federal Circuit prohibits: "Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Atofina*, 441 F.3d at 1001-02. And MacDermid's unsupported—and untrue—allegations that "Attorney Marcus [former head of Atotech's patent department] conceded that Atotech had a duty to provide [English translations]" (Opp. Br., p. 2) and "Atotech failed to find a credible explanation for its failure to disclose the LPW reference"

10

(Opp. Br., p. 13) mindfully ignores Mr. Marcus's testimony.  (Deposition of Stanley Marcus ("Marcus Depo.," Ex. K), pp. 124-25.)

Perhaps most telling, MacDermid's opposition attempts ***to impeach its own expert's*** "inadmissible opinion" regarding inequitable conduct.  (Opp. Br., p. 14, n. 2.)  MacDermid's expert testified that Dr. Newby was "honest," that he did not act "maliciously or deliberately," and that any alleged misconduct "could have been unintentional."  (Ex. D, Baudrand Depo., p. 148.)  MacDermid only response is that its expert "has no foundation to opine on and claims no expertise in any arcane art that permits one *to plumb the depths of Atotech's level of malice*."  (Opp. Br., p. 14, n. 2.)  Atmospherics aside, any claims of "malice" are plainly contradicted by the admissions of MacDermid's own expert.  Further, when coupled with the fact that MacDermid asks the Court to ***disregard*** the opinion of an expert skilled in the art of plating in favor of engaging in the same "arcane art," MacDermid's claims are exposed as baseless.

Indeed, MacDermid seems to argue that ***any*** information not cited to the Patent Office is both material and evidence of intent.  It is hornbook Federal Circuit law that applicants have no duty to cite information that is cumulative or that replicates information already before the Patent Office. *See, e.g., Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440 (Fed. Cir. 1991) (***predating*** 1992 rule change).  MacDermid's expert confirmed (1) that the allegedly withheld

11

LPW Catalyst reference is "essentially the same" as the '481 patent cited to the Patent Office and (2) that the LPW Anode reference is disclosed in Atotech's patents.  (Ex. D, Baudrand Depo., pp. 125-26, 195-96.)  Inequitable conduct is not a strict liability defense.  *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1343 (Fed. Cir. 2006).

Indeed, MacDermid—particularly its general counsel—knows this to be true as MacDermid has prosecuted, obtained, and now sued Atotech within in the last month for infringement of patent that failed to cite to the U.S. Patent Office at least *seven* potentially invalidating references cited during the prosecution of the European counterpart.  (Ex. L and Ex. M.)  There is simply no inequitable conduct, and MacDermid's defense should be dismissed.

### D.   MacDermid Fails To Establish Both The Fraudulent Conduct and Market Power Necessary To Sustain An Antitrust Counterclaim.

Despite its hyperbole and sweeping statements (most without any actual cite to the record or legal authority), MacDermid cannot resuscitate its Antitrust Counterclaim for two simple reasons:

- MacDermid has not established the requisite fraud; and

- MacDermid has not properly defined a relevant antitrust market.

As detailed above, MacDermid comes up remarkably short in its attempts to show the intent to deceive necessary for proving even inequitable conduct. An

antitrust counterclaim requires far more intent than an inequitable conduct claim—it requires proof of ***actual fraud***.  Given that MacDermid has wholly failed to prove intent to deceive, it follows that it comes up even shorter in proving fraud.  In fact, its papers are wholly devoid of any evidence related to fraud.  For this reason alone, Atotech's motion for summary judgment should be granted.

MacDermid has also not established a relevant market.  A "relevant market" is defined as those "commodities reasonably interchangeable by consumers for the same purposes."  *United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).  Atotech put forth evidence to show that MacDermid's proposed market is incomplete.  Indeed, MacDermid's then Global Director for Hard Chromium admitted the relevant market has many products beyond those in MacDermid's proposed market.  (Ex. N, p. 7.)  In response, MacDermid merely points to an Atotech business plan that narrowly discusses a "proprietary" chemicals market.  This, however, does not defeat summary judgment.

Atotech has presented evidence that the relevant market definition proposed by MacDermid fails to include many other products and alternatives properly included therein—MacDermid's response wholly ignores this.  Accordingly, MacDermid has failed to raise any genuine issue of material fact and its proposed market definition fails as a matter of law.

## III.    CONCLUSION

MacDermid has willfully ignored Atotech's patents, and now deliberately ignores the facts.  Indeed, MacDermid's resort to unsubstantiated barbs over objective facts only underscores the merits of Atotech's claims.  Surviving summary judgment requires much more than a diatribe.  Atotech's motion for summary judgment should be granted.

Respectfully submitted,

s/ William J. O'Shaughnessy
William J. O'Shaughnessy
Richard Hernandez
MCCARTER & ENGLISH, LLP
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652
(973) 622-4444
woshaughnessy@mccarter.com

Jay R. Campbell
Todd R. Tucker
Joshua M. Ryland
RENNER, OTTO, BOISSELLE & SKLAR
LLP
19th Floor
1621 Euclid Avenue
Cleveland, OH 44115
(216) 621-1113